(Nos. 66321, 66323 cons.—

(No. 66322.—

DENNIS S. KLUK, Appellee and Cross-Appellant, v. LOUIS I. LANG *et al.*, Appellants and Cross-Appellees.—ISAAC DANIEL, Appellant, v. LOUIS I. LANG *et al.*, Appellees.

*Opinion filed November 21, 1988.*

Lawrence J. Suffredin, Jr., and R. Matthew Simon, of Chicago (Simon & Spitalli, of counsel), for appellant and cross-appellee Lang.

Mathias W. Delort, of Chicago, for appellant Daniel and appellee and cross-appellant Kluk.

Neil F. Hartigan, Attorney General, of Springfield (Shawn W. Denney, Solicitor General, and Rita M. Novak, Assistant Attorney General, of Chicago, of counsel), for the People.

James M. Morphew, of Springfield, and J. Patrick Hanley and Darrell Widen, of Chicago, for *amici curiae* Michael J. Madigan *et al.*

JUSTICE STAMOS delivered the opinion of the court:

In each of these consolidated cases, the plaintiff challenged the constitutionality of section 25—6 of the Election Code (Ill. Rev. Stat., 1986 Supp., ch. 46, par. 25—6) (the statute), which provides a method for filling a va-

cancy in the office of State Senator or Representative in the General Assembly. The plaintiffs asserted that the statute represents an unconstitutional delegation of legislative power to private individuals. Louis I. Lang, the defendant in each case, had been appointed by the Democratic Party's representative committee of the First Representative District to succeed the former Representative, who had resigned.

The issues presented to the court are:

(a) Whether plaintiffs have standing.

(b) If so, whether the statute is unconstitutional as an improper delegation of legislative power.

(c) If so, whether the circuit court properly denied injunctive relief and denied a motion to amend the complaint.

Because we hold that plaintiffs have standing but that the statute is constitutional, we need not reach the remaining issue.

## FACTS

On May 29, 1987, Representative Alan J. Greiman, a member of the Democratic Party, was appointed by this court as a judge of the circuit court of Cook County, his appointment to be effective on July 10, 1987. (*In re* Judicial Vacancy (May 29, 1987), M.R. 1403.) On June 9, 1987, Isaac Daniel, as a resident, voter, and taxpayer in the First Representative District (the district), filed a complaint in the circuit court of Cook County under the title of Daniel v. Sutker, No. 87—CO—205, seeking (1) a declaratory judgment that the statute is unconstitutional and (2) an injunction to prevent the Democratic Party's representative committee (the committee) of the district from meeting to make an appointment to fill the impending vacancy in Representative Greiman's office. The defendants asserted that Representative Greiman had not yet resigned and had not been tendered an appointment in conflict with the Election Code, and on June 16

the circuit court dismissed Daniel's first complaint for lack of an actual controversy. That complaint is not involved in the appeals *sub judice.*

On July 1, 1987, Representative Greiman announced his intention to resign as of July 5. On July 2, the committee met, and its chairman announced that the purpose of the meeting was to consider candidacies for the "possible" vacancy to be created by resignation of Representative Greiman. At this meeting, the committee heard presentations from various candidates, including Kluk and Lang, and then (as Daniel asserts in his brief without contradiction) adjourned without announcing a date for its reconvening.

Representative Greiman's resignation became effective at 8 a.m. on Sunday, July 5, 1987. The committee met, appointed Lang to the vacancy in the office of Representative, and filed the appointment with the Secretary of State and the clerk of the House of Representatives, all on or under date of July 5.

While the record is silent on the point, it appears that, prior to filing the appointment of Lang with the Secretary and clerk, the committee never separately declared that a vacancy had occurred and never gave notification of the vacancy (rather than the appointment) to the State Board of Elections, the Secretary, and the clerk as required by the statute. (See Ill. Rev. Stat., 1986 Supp., ch. 46, par. 25—6(a).) However, a declaration of the vacancy was contained within the committee's certificate of Lang's appointment to fill the vacancy, and no party's brief raises as an issue any failure by the committee to make the statutory declaration and give notification of the vacancy to any of the specified recipients before appointing Lang (or to the State Board of Elections at all). Nor is it explicit in the statute that such declaration and notification must precede rather than accompany or follow an appointment.

On July 8, 1987, Daniel filed his complaint against Lang. Daniel sued as a resident, voter, and member of the Democratic Party in the district. Daniel stated his desire that only a duly and legally appointed person represent him in the House of Representatives. In his complaint, Daniel sought a declaratory judgment of unconstitutionality, a permanent injunction prohibiting Lang from serving in the House of Representatives under color of an unconstitutional appointment, and the designation of some public official or public body to take action to fill the vacancy created by Representative Greiman's resignation. By agreement of the parties, the People intervened to defend the statute's constitutionality, and Daniel moved for summary judgment.

Both Lang and the People filed motions to dismiss, which were granted. The circuit court held that Daniel failed to establish a sufficient interest in the controversy by merely relying upon his status as a taxpayer, registered voter, district resident, and member of the Democratic Party and that accordingly he lacked standing. Daniel appealed to the Appellate Court, First District, from the dismissal. Subsequently, we granted his motion for direct appeal under Rule 302(b) (107 Ill. 2d R. 302(b)) and consolidated his appeal with the appeals in Nos. 66321 and 66323.

Following dismissal of Daniel's complaint against Lang, Kluk filed his complaint against Lang on September 2, 1987. Kluk's claims and supporting allegations were similar to Daniel's, except that Kluk additionally alleged that he was qualified to fill the vacancy and that he had appeared before the committee prior to its appointment of Lang. The People intervened, and on October 16 the circuit court denied motions to dismiss filed by Lang and the People, finding that Kluk had standing because he had appeared before the committee.

On November 19, 1987, the circuit court granted Kluk's motion for summary judgment, finding the statute unconstitutional and in conflict with the principles announced in *People ex rel. Rudman v. Rini* (1976), 64 Ill. 2d 321, because it delegated to political party committees the power to appoint persons to fill the unexpired terms of members of the General Assembly. The court further held that Lang's appointment was invalid but that the court lacked power to remove Lang from office or to "delegate who shall fill a vacancy in a legislative office." Implicitly, therefore, the circuit court denied Kluk's request to enjoin Lang from serving as a Representative and Kluk's request to designate some public body or official to act to fill the Greiman vacancy. In addition, by an order entered on December 4, the circuit court denied Kluk's post-judgment motion for leave to amend his complaint to add a count sounding in *quo warranto*.

The People and Lang each appealed, pursuant to Rule 302(a)(1) (107 Ill. 2d R. 302(a)(1)), from the November 19 order finding the statute unconstitutional and holding that Kluk had standing, and from the October 16 order denying the motions to dismiss. Kluk cross-appealed from the circuit court's denial of his motion for entry of an injunction and from the denial of his post-judgment motion to amend. By leave of court, the Speaker and Minority Leader of the House of Representatives and the President and Minority Leader of the Senate have jointly filed briefs as *amici curiae*.

### OPINION
### I. Standing

Though the People do not raise the issue, Lang challenges each plaintiff's standing to litigate the constitutionality of the statute. He does so on two grounds: (1) that neither plaintiff has alleged a sufficient interest in

the controversy or has a personal stake in it, and (2) that plaintiffs may not challenge the statute's constitutionality through a declaratory judgment action under section 2—701(a) of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 2—701(a)) because their complaints involve a political question that is outside the court's jurisdiction under section 2—701(a).

Plaintiffs reply that under Lang's view of standing requirements, no one would have standing to bring such an action as theirs, since an individual legislator cannot single out a particular person for prosecution, subpoena, taxation, or other peril that would give the person a standing superior to that of fellow voters and taxpayers who might wish to contest the constitutionality of the statute under which the legislator assumed office. In this connection, plaintiffs seek to distinguish *People ex rel. Turner v. Lewis* (1982), 104 Ill. App. 3d 75, on which, after apparently viewing Kluk but not Daniel as a rival claimant to Lang's office, the circuit court relied to hold that Kluk but not Daniel had standing. In addition, plaintiffs deny that their causes of action involve a political question outside the court's declaratory judgment jurisdiction.

### a. Interest in Controversy

To have standing, a plaintiff seeking declaratory relief must present an actual controversy between adverse parties, as to which controversy the plaintiff is not merely curious or concerned about the outcome but possesses some personal claim, status, or right, a distinct and palpable injury to which is fairly traceable to the defendant's conduct and substantially likely to be prevented or redressed by the grant of such relief. (*Greer v. Illinois Housing Development Authority* (1988), 122 Ill. 2d 462, 493.) One who challenges the constitutionality of a statute by a declaratory judgment action must "bring

himself within the class as to whom the law is allegedly unconstitutional" and therefore must have sustained or be in immediate danger of sustaining a direct injury from enforcement of the challenged statute. *Illinois Gamefowl Breeders Association v. Block* (1979), 75 Ill. 2d 443, 451.

As for the requirement that a controversy be "actual," it is meant merely to distinguish justiciable issues from abstract or hypothetical disputes but is not intended to prevent resolution of concrete disputes admitting of a definitive and immediate determination of rights. *Miller v. County of Lake* (1980), 79 Ill. 2d 481, 487; *Gamefowl*, 75 Ill. 2d at 451-52.

Though "standing to sue" is an amorphous concept not readily definable (*Murphy v. Collins* (1974), 20 Ill. App. 3d 181, 186), the purpose of the standing requirement is to assure sufficient sharpness in defining the issues so that the court may be aided in deciding the case; it is meant to preclude uninterested persons from suing but is not meant to preclude a valid controversy from being litigated (*Di Santo v. City of Warrenville* (1978), 59 Ill. App. 3d 931, 935 (citing cases), *appeal denied* (1978), 71 Ill. 2d 607). The declaratory judgment remedy should be liberally applied and not restricted by unduly technical interpretations. *Gamefowl*, 75 Ill. 2d at 452.

Standing requirements have been liberalized to some degree during the past two decades. For example, although at one time a plaintiff not proceeding under specific statutory authority was restricted from suing to enjoin misuse of property held in public trust without showing special damage not suffered by the public at large, that doctrine was abrogated in *Paepcke v. Public Building Comm'n* (1970), 46 Ill. 2d 330. In *Paepcke*, this court stated:

> "If the 'public trust' doctrine is to have any meaning or vitality at all, the members of the public, at least taxpay-

ers who are the beneficiaries of that trust, must have the right and standing to enforce it. To tell them that they must wait upon governmental action is often an effectual denial of the right for all time." (*Paepcke*, 46 Ill. 2d at 341.)

The *Paepcke* holding was later cited to support reversal of an appellate court ruling that a taxpayer lacked standing to appeal derivatively the award of attorney fees against a public agency pursuant to settlement of a suit to which he had not been a party in the trial court. (*Metropolitan Sanitary District ex rel. O'Keeffe v. Ingram Corp.* (1981), 85 Ill. 2d 458, 475-76.) In *O'Keeffe*, the appellate court had held that the taxpayer was only indirectly aggrieved in common with taxpayers generally, but our court noted that the holding, resting as it did on the nature of the taxpayers' interest in the controversy, contravened the *Paepcke* holding. *O'Keeffe*, 85 Ill. 2d at 476.

Thus, the liberalized standing requirements recognized by *Paepcke* were expanded from suits based on the "public trust" doctrine to derivative appeals by taxpayers in behalf of public agencies, without reliance by the court or the taxpayer in either case on such a specific statutory right of taxpayer action as is provided by section 11—301 of the Code of Civil Procedure (Ill. Rev. Stat. 1987, ch. 110, par. 11—301), which concerns actions to restrain and enjoin the disbursement of public funds.

And, even when there was no actual controversy concerning the collection of revenue, this court has previously allowed an individual citizen and resident of Chicago to join in an original action for a declaratory judgment that a statute "relating to revenue" (see Ill. Const. 1970, art. VI, §4(a)) was invalid on the ground, among others, that it represented an unconstitutional delegation of legislative power. (*Polich v. Chicago School*

*Finance Authority* (1980), 79 Ill. 2d 188.) Moreover, a plaintiff has been held to have standing to seek a declaratory judgment when it was merely in the class of companies that might have won a contract, although it had not shown that it was the one that should have been awarded the contract. *State Mechanical Contractors, Inc. v. Village of Pleasant Hill* (1985), 132 Ill. App. 3d 1027, 1030, *appeal denied* (1985), 108 Ill. 2d 590.

In the present case, plaintiffs allege that their right to be represented by a duly elected legislator is violated by operation of the challenged statute. Lang does not dispute that there is an actual controversy. He merely asserts that plaintiffs lack sufficient interest in it. Yet, the fact that plaintiffs share their right of representation with other voters in the district does not mean that the right is any less personal. The essence of the democratic voting right is that it is equally and separately vested in each member of the electorate. The right to vote is not a common right of the public, such as the beneficial interest in property held in public trust, or the assurance that public funds will be expended lawfully. Rather, the voting right is by definition capable of being exercised individually by each voter; indeed, this is its genius. The right to be represented is intertwined with the right to vote and is likewise personal to each voter.

Here, plaintiffs in effect claim injury to their voting right by the statutory creation of what they deem an unconstitutional selection mechanism to replace the Representative as to whom their voting right was originally exercisable. The alleged violation of plaintiffs' right is traceable at least in part to Lang's conduct in seeking and accepting appointment to the vacancy in office, and the remedies sought, if granted, would be likely to redress the violation. In terms of the standards that we have previously enunciated, plaintiffs therefore have shown an actual controversy and their interest in it. See

*Greer v. Illinois Housing Development Authority* (1988), 122 Ill. 2d 462, 493; *Springfield Rare Coin Galleries, Inc. v. Johnson* (1986), 115 Ill. 2d 221, 228; *Metropolitan Sanitary District ex rel. O'Keeffe v. Ingram Corp.* (1981), 85 Ill. 2d 458, 476; *Illinois Gamefowl Breeders Association v. Block* (1979), 75 Ill. 2d 443, 451-52; *Underground Contractors Association v. City of Chicago* (1977), 66 Ill. 2d 371, 376.

"[T]he salient aspect of standing is its focus on the party seeking an adjudication and not the issue he desires to have adjudicated." (*Murphy v. Collins* (1974), 20 Ill. App. 3d 181, 186, citing *Flast v. Cohen* (1968), 392 U.S. 83, 20 L. Ed. 2d 947, 88 S. Ct. 1942.) "The 'gist of the question of standing' is whether the party seeking relief has 'alleged such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult constitutional questions.' " (*Flast v. Cohen* (1968), 392 U.S. 83, 99, 20 L. Ed. 2d 947, 961, 88 S. Ct. 1942, 1952, citing *Baker v. Carr* (1962), 369 U.S. 186, 204, 7 L. Ed. 2d 663, 678, 82 S. Ct. 691, 703.) Since the right to vote for a Representative, and the concomitant right to be represented through a lawfully established mechanism, are equally dispersed throughout the electorate, no other plaintiffs could sharpen the issues by bringing a keener interest to the litigation. Though, as in the Federal system, our courts should not be called upon to decide cases of "abstract" rather than "concrete injury" (*Schlesinger v. Reservists Committee to Stop the War* (1974), 418 U.S. 208, 219-21, 41 L. Ed. 2d 706, 717-19, 94 S. Ct. 2925, 2931-32), and though it is ordinarily not sufficient that a plaintiff have "merely a general interest common to all members of the public" (*Schlesinger*, 418 U.S. at 219-20, 41 L. Ed. 2d at 718, 94 S. Ct. at 2931, citing *Ex parte Levitt* (1937), 302 U.S. 633, 634, 82 L.

Ed. 493, 493, 58 S. Ct. 1, 1; *cf. Greer v. Illinois Housing Development Authority* (1988), 122 Ill. 2d 462, 494), the United States Supreme Court has "squarely held that voters who allege facts showing disadvantage to themselves as individuals have standing to sue" (*Baker v. Carr* (1962), 369 U.S. 186, 206, 7 L. Ed. 2d 663, 679, 82 S. Ct. 691, 704; *cf. Pontikes v. Kusper* (N.D. Ill. 1972), 345 F. Supp. 1104 (three-judge court), *aff'd* (1973), 414 U.S. 51, 38 L. Ed. 2d 260, 94 S. Ct. 303 (voters had standing to challenge 23-month rule on participation in different party's primary); *Bendinger v. Ogilvie* (N.D. Ill. 1971), 335 F. Supp. 572, 574 (three-judge court) (supporters of candidate had standing because their right to vote was impaired by 24-month rule on candidate's changing parties); *Jackson v. Ogilvie* (N.D. Ill. 1971), 325 F. Supp. 864 (three-judge court), *aff'd mem.* (1971), 403 U.S. 925, 29 L. Ed. 2d 705, 91 S. Ct. 2247 (candidate's supporters' right to vote impaired by petition signature requirements)).

In this connection, the trial court's and Lang's reliance on *People ex rel. Turner v. Lewis* (1982), 104 Ill. App. 3d 75, is unwarranted. The trial court relied on *Turner* to hold that Kluk, unlike Daniel, had standing because he was a rival claimant to the office. According to the *Turner* court, such a claimant would have the standing that Turner lacked. (*Turner*, 104 Ill. App. 3d at 80.) However, the standing of neither Daniel nor Kluk need depend on status as a rival, since it can rest on their claim of injury to their representational right; and neither of them should have to allege or prove that he would have been appointed instead of Lang (*cf. State Mechanical Contractors, Inc. v. Village of Pleasant Hill* (1985), 132 Ill. App. 3d 1027, 1030, *appeal denied* (1985), 108 Ill. 2d 590). Moreover, unlike the relator in *Turner*, who alleged that the challenged officeholder had not been appointed in accordance with statute, the present

plaintiffs allege that the statute itself is unconstitutional. Even though Kluk appeared before the committee, he could not consistently maintain both that he is a rival claimant and that the statute under which he would claim is unconstitutional, nor does he do so. Neither does Lang contend that Kluk is estopped by virtue of his appearance before the committee. Therefore, as Lang himself argues, though with somewhat different intent, no distinction as to standing can correctly be made between Kluk and Daniel on the ground that Kluk is a rival claimant to the office.

This is all the truer since *Turner* was a *quo warranto* case, and historically the requirements for a private person's standing to maintain *quo warranto* proceedings have been stricter than those for declaratory judgment standing. (See *People ex rel. Miller v. Fullenwider* (1928), 329 Ill. 65; *People ex rel. Turner v. Lewis* (1982), 104 Ill. App. 3d 75, 77; *People ex rel. Hiller v. Bevirt* (1938), 297 Ill. App. 335, 338-40; see generally Annot., 51 A.L.R.2d 1306 (1957); E. Borchard, Declaratory Judgments 362-63, 858-74 (2d ed. 1941).) Cases cited by Lang on the standing issue are inapposite precisely because they involved *quo warranto* proceedings. See *People ex rel. Miller v. Fullenwider* (1928), 329 Ill. 65; *People ex rel. Turner v. Lewis* (1982), 104 Ill. App. 3d 75; *People ex rel. Palmatier v. Tighe* (1956), 11 Ill. App. 2d 1; *People ex rel. Hiller v. Bevirt* (1938), 297 Ill. App. 335.

Accordingly, we hold that both plaintiffs had standing to bring their declaratory judgment actions.

### b. Political Question

Lang also contends that plaintiffs' causes of action involve a political question and that accordingly, under section 2—701 of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 2—701), they may not seek a de-

claratory judgment as to the constitutionality of the statute. Section 2—701(a) provides in part:

> "In no event shall the court entertain any action or proceeding for a declaratory judgment or order involving any political question where the defendant is a State officer whose election is provided for by the Constitution; however, nothing herein shall prevent the court from entertaining any such action or proceeding for a declaratory judgment or order if such question also involves a constitutional convention or the construction of a statute involving a constitutional convention." (Ill. Rev. Stat. 1985, ch. 110, par. 2—701(a).)

While this contention by Lang may be said to involve an issue of jurisdiction rather than standing, he has treated it as a standing issue.

Lang does not address the question whether, since it was his appointment and not his election that was provided for by the Illinois Constitution, he comes within the terms of the quoted language of section 2—701(a). Nevertheless, he cites *Murphy v. Collins* (1974), 20 Ill. App. 3d 181, and *Baker v. Carr* (1962), 369 U.S. 186, 7 L. Ed. 2d 663, 82 S. Ct. 691, for the definition of a political question.

*Murphy* merely defines "political question" as a label that is placed, when appropriate, on issues that would require a court to adjudicate in a manner violative of the separation of powers doctrine. (*Murphy*, 20 Ill. App. 3d at 196.) The *Murphy* court found no political question in that case, which involved a challenge by a prospective witness to a subpoena issued by the chairman of a legislative subcommittee. The challenge was based on the plaintiff's contention that the subcommittee was improperly created. The *Murphy* court said:

> "[W]e are of the opinion that a determination by a court that if an integral part of the legislative branch of government is permitted to proceed in a particular manner the result will be a deprivation of a constitutional right of

an individual, does not constitute a lack of respect due a coordinate branch of the government, but it is an exercise of one of the duties committed to the judiciary. *** The issue presented in the case at bar was one concerning the consistency of the actions of certain elected representatives with the constitutional rights of a citizen of Illinois. The instant controversy does not present any of the attributes of a political question ***." *Murphy*, 20 Ill. App. 3d at 197.

The *Murphy* opinion and Lang rely in part on language from *Baker v. Carr* that "[p]rominent on the surface of any case held to involve a political question is found a textually demonstrable constitutional commitment of the issue to a coordinate political department." (*Baker*, 369 U.S. at 217, 7 L. Ed. 2d at 686, 82 S. Ct. at 710.) Section 2(d) of article IV of the Illinois Constitution provides that an appointment to fill a vacancy in a legislative office shall be made "as provided by law." (Ill. Const. 1970, art. IV, §2(d).) From this, Lang argues that the Constitution has committed the matter solely to the General Assembly's discretion by a "textually demonstrable constitutional commitment."

Despite Lang's contention, it seems clear that what was committed was the task of detailing the manner in which an appointment is to be made, not the issue of whether the manner chosen is otherwise constitutional. It could not seriously be argued that by section 2(d) the General Assembly was given plenary power, for instance, to prescribe an invidious racially discriminatory procedure for making an appointment to fill a vacancy, much less that it was given the power to do so free from judicial review. "The doctrine of which we treat is one of 'political questions,' not one of 'political cases.' The courts cannot reject as 'no law suit' a bona fide controversy as to whether some action denominated 'political' exceeds constitutional authority." *Baker v. Carr* (1962),

369 U.S. 186, 217, 7 L. Ed. 2d 663, 686, 82 S. Ct. 691, 710.

The issue presented by plaintiffs is not a political question in *Baker* or *Murphy* terms or in terms of section 2—701. Its judicial resolution need not intrude on the powers of the legislative branch but may merely declare plaintiffs' rights in accordance with the judiciary's proper function. " 'The mere fact that political rights and questions are involved does not create immunity from judicial review. [Citations.]' " *Rock v. Thompson* (1981), 85 Ill. 2d 410, 418 (per Goldenhersh, C.J., with two justices concurring and one justice concurring in decision), quoting *Donovan v. Holzman* (1956), 8 Ill. 2d 87, 93.

Accordingly, we hold that the circuit court was not deprived of power to adjudicate plaintiffs' causes of action by virtue of the political-question exception to its declaratory judgment jurisdiction.

## II. Constitutionality

Lang, the People, and the *amici* contend that the statute is constitutional because it conforms to the terms of section 2(d) of article IV of the Illinois Constitution and because it was the intention of the constitutional convention to leave the General Assembly wide latitude to determine how appointments to fill vacancies in legislative office were to be made. However, plaintiffs contend that placing in the hands of political party committees the right to fill legislative vacancies by appointment represents an unconstitutional delegation of legislative power. They cite *People ex rel. Rudman v. Rini* (1976), 64 Ill. 2d 321, in support of their contention.

The statute appears to meet the constitutional mandate that an appointment to fill a vacancy is to be made within 30 days after the vacancy occurs and that the appointee is to be of the same political party as the legisla-

tor whom the appointee succeeds. (Compare Ill. Const. 1970, art. IV, §2(d), with Ill. Rev. Stat., 1986 Supp., ch. 46, par. 25—6.) In addition, transcripts of the proceedings of the 1970 constitutional convention confirm that the delegates contemplated that the General Assembly would proceed under the new constitution to create a new appointive mechanism to fill vacancies instead of the former system whereby the Governor had the duty of calling a special election. (4 Record of Proceedings, Sixth Illinois Constitutional Convention 2667-69 (hereinafter cited as Proceedings).) In fact, the delegates heard pointed discussion of the possibility that the appointment power to fill a vacancy in legislative office would be given to someone other than the Governor. The discussion specifically included a political party's representative committee among the options. 4 Proceedings 2668-69 (Delegates Elward, Friedrich, Lewis, and Peccarelli).

In addition, the principle is well established that the Constitution is not a grant of power to the General Assembly but only checks the latter's power. (*Client Follow-Up Co. v. Hynes* (1979), 75 Ill. 2d 208, 215; *North Shore Post No. 21 of the American Legion v. Korzen* (1967), 38 Ill. 2d 231, 233; *People ex rel. Woodyatt v. Thompson* (1895), 155 Ill. 451, 470-71.) Thus, unless in the Constitution of Illinois or of the United States a restriction is found on the General Assembly's discretion to determine how to fill legislative vacancies by appointment, its discretion should receive judicial deference. See *People ex rel. Adamowski v. Metropolitan Sanitary District* (1958), 14 Ill. 2d 271, 281; *Woodyatt*, 155 Ill. at 470.

However, Kluk contends that in light of this court's decision in *People ex rel. Rudman v. Rini* (1976), 64 Ill. 2d 321, the unconstitutionality of the statute is clear. In *Rudman*, the challenged statute purported to transfer from the county boards to the respective political par-

ties' county central or county board district central committees the power to appoint individuals to fill vacancies in the county offices and county board seats of certain counties where the previous incumbents were affiliated with particular political parties. The only restrictions on the central committees' appointment power would have been the requirements that an appointee be qualified, be of the same political party as the officer whom the appointee succeeded, and be appointed within 60 days of the occurrence of the vacancy. See Pub. Act 79–118, eff. July 8, 1975 (amending Ill. Rev. Stat. 1973, ch. 46, par. 25–11).

Finding the challenged statute unconstitutional in *Rudman*, this court held that the State's sovereign power to appoint public officers could not be conferred upon private persons or groups and that, "[f]ocusing on this particular act," political parties' central committees were indistinguishable from private individuals. (*Rudman*, 64 Ill. 2d at 326-27.) The decision was based in part on the fact that other Election Code sections that provided "minimal control" over the party committees "neither pertain to nor affect the authority granted to the respective committees in [the challenged statute]." (*Rudman*, 64 Ill. 2d at 327.) The court also stated:

"It is not the political party but the people that have the real interest in the vacant office, and the method of selection should reflect their choice as well as possible. *** Although the Illinois Constitution confers the authority to provide a method for appointing and electing county officers upon the General Assembly in article VII, the basic intent of section 4(c) of this article, which is to have the several counties choose their own officials, is apparent and cannot be overlooked. The mode of appointment should be fashioned as closely as possible after that purpose." *Rudman*, 64 Ill. 2d at 327.

Though *Rudman* was followed in *dictum* in *Walker v. State Board of Elections* (1976), 65 Ill. 2d 543, 560, *Rudman* can be distinguished from the case at bar in several respects besides the fact that it involved both *quo warranto* and declaratory judgment proceedings (see *Rudman*, 64 Ill. 2d at 324).

First, the statute in the present case does itself impose a set of duties on political party committees that arguably confer indicia of public agency on them when they are performing their duties under the statute. A committee shall (1) declare that a vacancy exists, (2) give notification to three specified State agencies or officers, and (3) do so within three days of the occurrence of the vacancy. (Ill. Rev. Stat., 1986 Supp., ch. 46, par. 25—6(a).) The statute also sets out in some detail the voting procedure that the committees are permitted to use in making appointments. (Ill. Rev. Stat., 1986 Supp., ch. 46, par. 25—6(d).) Moreover, the appointments must be (1) in writing, (2) signed by the committee members whose votes are necessary to effect them, and (3) filed with two specified State officers. (Ill. Rev. Stat., 1986 Supp., ch. 46, par. 25—6(e).) These features were absent from the legislation examined in *Rudman*. See Pub. Act 79—118, eff. July 8, 1975 (amending Ill. Rev. Stat. 1973, ch. 46, par. 25—11).

Second, the *Rudman* statute was adopted pursuant to constitutional language that was less specific than the language undergirding the statute in the case at bar. Section 3(b) of article VII of the Constitution merely provides that "[t]he General Assembly by law shall provide methods available to all counties for the *election* of *county board members*." (Emphasis added.) (Ill. Const. 1970, art. VII, §3(b).) In addition, section 4(c) of article VII reads as follows:

"Each county shall *elect* a sheriff, county clerk and treasurer and may *elect or appoint* a coroner, recorder, assessor, auditor and such other officers *as provided by law* or by county ordinance. Except as changed pursuant to this Section, elected county officers shall be elected for terms of four years at general elections as provided by law. Any office may be created or eliminated and the terms of office and manner of selection changed by county-wide referendum. Offices other than sheriff, county clerk and treasurer may be eliminated and the terms of office and manner of selection changed by law. Offices other than sheriff, county clerk, treasurer, coroner, recorder, assessor and auditor may be eliminated and the terms of office and manner of selection changed by county ordinance." (Emphasis added.) (Ill. Const. 1970, art. VII, §4(c).)

This language must be compared with that of section 2(d) of article IV, which reads in part as follows:

"Within thirty days after a [legislative] vacancy occurs, it shall be filled by appointment as provided by law. *** An appointee to fill a vacancy shall be a member of the same political party as the person he succeeds." Ill. Const. 1970, art. IV, §2(d).

Article VII of the Constitution nowhere mentions the filling of county office vacancies; accordingly, while the General Assembly undoubtedly has power to provide for that contingency, the power is not directly affirmed by the Constitution. Thus, in testing the constitutionality in *Rudman* of the means chosen by the General Assembly to fill county office vacancies, the court was not aided by any specific constitutional provision that might have counterbalanced the general rule against delegation of sovereign power to private individuals or that might have served to inform the court's consideration of the challenged statute. In fact, though we do not purport to consider or pass on the matter, certain of the quoted language of article VII might by some be felt to suggest

doubt as to whether the General Assembly can provide at all for the appointment as distinguished from the election of county board members, sheriffs, clerks, and treasurers. In addition, article VII is replete with provisions recognizing county voters' rights to select their own officials, as are the constitutional convention transcripts of discussion of the article. (See, *e.g.*, 4 Proceedings 3253, 3256-58, 3262, 3278.) In all these respects, article VII differs from article IV.

Third, and quite significantly, article IV (in contrast to article VII) expressly recognizes the importance of preserving as to any appointee the same political party affiliation that the previous incumbent had. As *amici* and Lang urge, the statute now in question addressed precisely this concern and, in view of the speed with which a vacancy must be filled and the special competence of political party committees to make decisions based on party affiliation, is in marked harmony with article IV, section 2(d). The constitutional convention discussion reinforces this conclusion.

And, though not controlling here because it construed the Federal Constitution's due process, equal protection, and right of association provisions rather than any provisions of the Illinois Constitution, a decision of the Supreme Court of the United States furnishes additional reinforcement for our finding of constitutionality. In *Rivera-Rodriguez v. Popular Democratic Party* (1982), 457 U.S. 1, 72 L. Ed. 2d 628, 102 S. Ct. 2194, the Court noted with favor that the Puerto Rico Supreme Court had held that appointment by a political party to fill a legislative vacancy "was a legitimate mechanism serving to protect the mandate of the preceding election and to preserve the 'legislative balance', until the next general election." (*Rivera-Rodriguez*, 457 U.S. at 13, 72 L. Ed. 2d at 637, 102 S. Ct. at 2201.) The Court also observed that Puerto Rico's Legislative Assembly "could reasona-

bly conclude that appointment by the previous incumbent's political party would more fairly reflect the will of the voters than appointment by the Governor or some other elected official." *Rivera-Rodriguez*, 457 U.S. at 12, 72 L. Ed. 2d at 637, 102 S. Ct. at 2201; accord *Lynch v. Illinois State Board of Elections* (7th Cir. 1982), 682 F.2d 93; *Cintron-Garcia v. Romero-Barcelo* (1st Cir. 1982), 671 F.2d 1, 6; *cf. Lindahl v. Bartolomei* (N.D. Ind. 1985), 618 F. Supp. 981, 982 (vacancy in sheriff's office filled by party precinct committeemen under Indiana law).

Not only can *Rudman* be distinguished for the foregoing reasons, but also this court has previously suggested that *Rudman* did not speak the last word on the question of delegating sovereign power to arguably private actors. In holding that, whether or not it was a "local governmental unit," a county Veterans Assistance Commission was not a private body or group even though it was constituted by delegates appointed by private veterans' organizations, this court noted "parenthetically" that it was thus not necessary to consider whether the *Rudman* rule admitted of any exceptions. (*Makowicz v. County of Macon* (1980), 78 Ill. 2d 308, 313-14.) This court then cited to three commentators who have examined critically, at length, and in functional terms the question of delegating sovereign power to arguably private parties. Another commentator has criticized *Rudman* as apparently standing for too rigid a rule. See Note, *People ex rel. Rudman v. Rini—Amendment Changing Method for Filling Vacancies in County Offices Is Unconstitutional*, 1978 U. Ill. L.F. 158 (note by Susan E. Barton).

In any event, the marked differences between the statutes and constitutional underpinnings in *Rudman* and those in the present case serve to take the present case out of the *Rudman* rule. Moreover, insofar as *Rud-*

*man* relied on the view that political party committees
are not accountable to the public and do not substan-
tially represent the local populace affected by the ap-
pointment (see *Rudman*, 64 Ill. 2d at 327); the fact is
that members of the committee in the case at bar must
have been residents of a ward or township falling wholly
or partly within the representative district (see Ill. Rev.
Stat. 1985, ch. 46, pars. 7—8(b), (d), 8—5), they were to
have been elected in the Democratic Party primary (see
Ill. Rev. Stat. 1985, ch. 46, par. 7—8(b)), and thus they
did represent the local Democratic voters whose partisan
interests are constitutionally mandated for protection
through any appointment mechanism created by the
General Assembly (see Ill. Const. 1970, art. IV, §2(d)).
(We note parenthetically that although the case at bar in-
volves a representative district wholly within populous
Cook County, section 8—5 of the Election Code also pro-
vides (1) that the person chairing a party's county cen-
tral committee is a member of the legislative or repre-
sentative committee for any legislative or representative
district that includes all or part of the county if the
county has fewer than 2 million inhabitants; (2) that, if a
district includes no part of a county with 2 million or
more inhabitants, its committee consists of the persons
chairing the county central committees of all counties ly-
ing wholly or partly within the district; and (3) that, if a
district falls wholly within one county (except for coun-
ties of 2 million or more inhabitants), the district's com-
mittee consists of the person chairing the county central
committee and two members of the county central com-
mittee who reside in the district. Ill. Rev. Stat. 1985, ch.
46, par. 8—5.) The appointee of the committee will serve
for only a limited portion of a full term, prior to the end
of which the appointee is subject to the will of the vot-
ers, albeit with whatever advantages a short incumbency
provides. And, while it continues to be true that "[e]ven

a temporary loss of a constitutional right of a small segment of society is cause to void" a statute (*Rudman*, 64 Ill. 2d at 328), such a principle will apply only if the statute is indeed unconstitutional.

The concerns that underlay the *Rudman* opinion are alleviated by the facts in the case at bar. And though political party committees may be private entities in many contexts, the extensive responsibility given them by the Election Code in connection with appointments to legislative vacancies, pursuant to a constitutional mandate to preserve the political party affiliation of the former incumbent as to the successor legislator, takes them at least as far from private status in that context as was the Veterans Assistance Commission that recommended allocation of county funds in *Makowicz*. It remains only for them to carry out their responsibility in scrupulous compliance with the statute.

In addition, the Election Code elsewhere clearly implies that the party committees in their appointment capacity are to be considered public agencies. Section 25—1 of the Code reads as follows:

> "Resignations of elective offices shall be made to the *officer*, court or county board authorized by law to fill a vacancy in such office by appointment, or to order an election to fill such vacancy." (Emphasis added.) Ill. Rev. Stat. 1985, ch. 46, par. 25—1.

While a legislature "cannot abdicate its general lawmaking powers, it may authorize others to do things which it might properly do, but which it cannot conveniently or advantageously perform" (Annot., 97 A.L.R.2d 361, 364 (1964); accord *People ex rel. Chicago Dryer Co. v. City of Chicago* (1952), 413 Ill. 315, 320), even though it is the general rule that such power cannot be conferred upon private persons (*Chicago Dryer*, 413 Ill. at 320). Because of the specific constitutional provision in accordance with which the statute in the case at bar was

adopted, and in view of the discussion pertaining to that provision at the constitutional convention, we hold that the statute does not represent an unconstitutional delegation of legislative power to private persons.

## CONCLUSION

For the foregoing reasons, the circuit court's order of November 19, 1987, in Nos. 66321 and 66323 is reversed insofar as it declared that the statute is unconstitutional and that Lang's appointment was invalid. In all other respects the order is affirmed, as are the order of October 16, 1987, denying the motions to dismiss on standing grounds, and the order of December 4, 1987, denying Kluk's motion to amend. Because Daniel would not have been able to show that the statute was unconstitutional, the circuit court's order in No. 66322 dismissing his complaint is affirmed even though the dismissal was ordered on the erroneous ground that Daniel lacked standing.

*Nos. 66321 & 66323 — Affirmed in part*
*and reversed in part.*
*No. 66322 — Affirmed.*