2020 IL App (5th) 200012-U

NO. 5-20-0012

NOTICE

Decision filed 01/16/20. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

NOTICE

This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| MICHAEL SUAREZ, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | St. Clair County. |
| | ) | |
| v. | ) | No. 19-MR-324 |
| | ) | |
| METRO EAST SANITARY DISTRICT, | ) | Honorable |
| | ) | Julie K. Katz, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

PRESIDING JUSTICE WELCH delivered the judgment of the court.
Justices Moore and Boie concurred in the judgment.

**ORDER**

¶ 1    *Held*: The circuit court did not abuse its discretion in issuing a temporary restraining order (TRO) after notice and a hearing where the plaintiff taxpayer demonstrated that he had a certain and clearly ascertainable right in ensuring that the Metro-East Sanitary District complied with the recent amendment to section 3-1 of the Metro-East Sanitary District Act of 1974 (Pub. Act 101-308 (eff. Jan. 1, 2020) (amending 70 ILCS 2905/3-1)), that he would suffer irreparable harm without the protection of a TRO, that he had a substantial likelihood of success on the merits in the underlying action, and a balancing of the equities favored issuing the TRO.

¶ 2    This interlocutory appeal concerns a recent amendment to section 3-1 of the Metro-East Sanitary District Act of 1974 (Act) (Pub. Act 101-308 (eff. Jan. 1, 2020) (amending 70 ILCS 2905/3-1)), which sets forth the procedures for appointment of

1

commissioners to the Metro East Sanitary District's (MESD) Board of Commissioners (Board). On December 27, 2019, the plaintiff, Michael Suarez, who is a taxpayer of the MESD, filed a complaint in the circuit court of St. Clair County for a declaratory judgment, seeking a declaration that the recent amendment to section 3-1 was valid and mandatory upon the defendant, the MESD. On January 6, 2020, Suarez filed a motion for temporary restraining order (TRO), requesting that the circuit court (1) order the MESD to comply with section 3-1 of the Act as amended, which included recognizing the appointment of Scott Oney as a commissioner to the Board, and (2) prohibit the MESD from taking any further action in violation of section 3-1 of the Act. Thereafter, the court granted Suarez's request for a TRO. The MESD filed a timely notice of interlocutory appeal pursuant to Illinois Supreme Court Rule 307(d) (eff. Nov. 1, 2017). For the following reasons, we affirm the circuit court's granting of the TRO.

¶ 3                                    I. BACKGROUND

¶ 4     Suarez resides in Fairmont City, Illinois, and is a resident/taxpayer of the MESD. The MESD, as a special district, is a corporate and politic body that was organized and that exists under the Act (70 ILCS 2905/1-1 *et seq.* (West 2018)). The MESD is governed by the Board, which consists of five commissioners. 70 ILCS 2905/3-1 (West 2018). The MESD has a contractual agreement with Granite City to purchase wastewater treatment services from the Granite City Wastewater Treatment Plant at rates established by the Granite City Regional Treatment Board. The mayor of Granite City is an active participant in the rate negotiations.

¶ 5     On August 9, 2019, Illinois Public Act 101-308 was enacted, which amended section 3-1 of the Act with regard to the appointment of commissioners to the Board. Specifically, the amendment instructed as follows:

> "Beginning on the effective date of this amendatory Act of the 101st General Assembly, the mayor, or his or her designee, of the largest municipality in the county having the greater equalized assessed valuation of the district shall be an *ex officio* commissioner with a right to vote. If there is not a vacant commissioner position from the county having the greater equalized assessed valuation on the effective date of this amendatory Act of the 101st General Assembly, then the term of the last appointed commissioner from that county is terminated on the effective date of this amendatory Act of the 101st General Assembly." Pub. Act 101-308 (eff. Jan. 1, 2020) (amending 70 ILCS 2905/3-1).

¶ 6     On December 27, 2019, Suarez filed a complaint for declaratory judgment, which alleged the following: that, on November 22, 2019, the Board held a special meeting; and that, based on the public notice from that meeting,[1] it appeared that the MESD was preparing to challenge Public Act 101-308 and was also attempting to modify the bylaws to change the number of Board commissioners required to constitute a quorum, which was contrary to section 1.02 of the Open Meetings Act (5 ILCS 120/1.02 (West 2018)).

¶ 7     On January 2, 2020, Granite City Mayor Ed Hagnauer named Scott Oney, a MESD resident, as his designee to sit on the Board with all rights and powers designated under section 3-1 as amended. In response, on January 3, 2020, the president of the MESD Board sent a letter to Mayor Hagnauer, advising that his designation of a commissioner was invalid as a matter of law and that the Board would not recognize that appointment for the reasons "set out in the attached lawsuit." Attached to the letter was a complaint for declaratory judgment filed on December 23, 2019, by the MESD against

---

[1]Suarez asserted that the minutes of this November 22, 2019, meeting were not made public.

Mayor Hagnauer in the circuit court of Madison County. The complaint alleged that Granite City, Illinois, interpreted the section 3-1 amendment to mean that, beginning January 2020, Mayor Hagnauer, as the mayor of Granite City, could assume an *ex officio* commissioner position on the Board with a right to vote; that Illinois has adopted the doctrine of incompatibility of offices, which precludes simultaneous tenure in two public offices where the duties of the two offices conflict; and that there is an incompatibility between the offices of the mayor of Granite City and a board member of the MESD. Thus, the complaint contended that there is a conflict of interest which prevented the same individual from holding both positions and that, if Mayor Hagnauer was seated as a MESD commissioner or was allowed to designate a MESD commissioner, there would be a clear violation of long-standing and well-developed Illinois law.

¶ 8    On January 6, 2020, Suarez filed a motion for TRO within the St. Clair County declaratory judgment action. In the motion for TRO, Suarez requested that the trial court issue a TRO pursuant to section 11-101 of the Code of Civil Procedure (Code) (735 ILCS 5/11-101 (West 2018)), requiring the MESD to comply with section 3-1 of the Act as amended by recognizing Mayor Hagnauer's designation of an MESD commissioner and prohibiting the MESD from taking any action in violation of the amended Act pending resolution of his complaint for declaratory judgment.

¶ 9    Suarez alleges that he had a clearly ascertainable right that needed protection in that, as an MESD resident/taxpayer, he had a tangible legal interest in ensuring that the MESD complied with the amended Act as the MESD's misconduct was injurious to the public trust. He asserted that irreparable harm would result without the protection of an

4

injunction because there was no adequate remedy at law, *i.e.*, that monetary damages would not adequately compensate for the injury and the injury could not be measured by pecuniary standards. He alleged that he had a substantial likelihood of success on the merits in the underlying action because there was a presumption that legislation was valid, and that, unless and until the MESD established such invalidity, the status quo was section 3-1 of the Act as amended, which expressly provided for the dual office-holding of the Granite City mayor and the MESD commissioner. He last alleged that he had presented a fair question regarding the existence of his claimed rights. He requested that the circuit court issue a TRO to preserve the status quo pending resolution of his complaint for declaratory judgment.

¶ 10 On January 6, 2020, the motion for TRO was served on the MESD through counsel on or about 9:36 a.m. by email, with notice that the hearing on the motion would occur at 11:30 a.m. that day. That same day, the circuit court conducted an emergency hearing on the motion for TRO in which both parties appeared through counsel, and the court entered the TRO prepared by Suarez's counsel.[2] The language of the TRO mirrored the language used in Suarez's motion for TRO. The court also entered an order denying the MESD's objection to venue[3] and setting the case for an early hearing on Suarez's complaint for declaratory judgment on January 13, 2020, seven days after the entry of the TRO. Pursuant to Illinois Supreme Court Rule 307 (eff. Nov. 1, 2017), the

---

[2]There is no transcript of the emergency hearing in the supporting record filed with this court.

[3]At the January 6, 2020, emergency hearing, the MESD's counsel objected to the proceedings and made an oral motion to transfer venue to Madison County, Illinois, where a nearly identical action had been filed.

5

MESD filed a timely notice of interlocutory appeal regarding the TRO issued by the circuit court and the court's denial of its oral motion to transfer venue.

¶ 11    On January 9, 2020, this court entered an order stating that a separate permissive interlocutory appeal under Illinois Supreme Court Rule 306 (eff. Nov. 1, 2017) must be filed to appeal from the trial court's order denying a transfer of venue because it is not an order that can be appealed under Rule 307.   Accordingly, this appeal only involves the issuance of the TRO.

¶ 12                                        II. ANALYSIS

¶ 13    Initially, the MESD contends that the circuit court erred in relying on an unverified motion when issuing the TRO and in issuing a TRO that was not limited in time.  Section 11-101 of the Code provides as follows:

> "No temporary restraining order shall be granted without notice to the adverse party unless it clearly appears from specific facts shown by affidavit or by the verified complaint that immediate and irreparable injury, loss, or damage will result to the applicant before notice can be served and a hearing had thereon. Every temporary restraining order granted without notice shall be indorsed with the date and hour of signing; shall be filed forthwith in the clerk's office; shall define the injury and state why it is irreparable and why the order was granted without notice; and shall expire by its terms within such time after the signing of the order, not to exceed 10 days, as the court fixes, unless within the time so fixed the order, for good cause shown, is extended for a like period or unless the party against whom the order is directed consents that it may be extended for a longer period.  *** In case a temporary restraining order is granted without notice, the motion for a preliminary injunction shall be set for hearing at the earliest possible time ***."  735 ILCS 5/11-101 (West 2018).

¶ 14    We conclude that the MESD's contentions are without merit as the TRO here was entered with notice and after a hearing.  A TRO can be entered with notice or without notice.  *County of Boone v. Plote Construction, Inc.*, 2017 IL App (2d) 160184, ¶ 27.

6

The supporting record filed by the MESD indicates that the motion for TRO and emergency notice of hearing for the motion were served on counsel for the MESD approximately two hours before the emergency hearing. Also, the MESD's counsel was present and participated in this emergency hearing. Illinois courts have considered much less notice to be sufficient. See *American Warehousing Services, Inc. v. Weitzman*, 169 Ill. App. 3d 708, 715 (1988) (notice given by telephone 30 minutes before the motion for TRO was granted was considered sufficient notice); see also *Walter v. City of West Chicago*, 39 Ill. App. 3d 297, 298-300 (1976) (an informal, telephone call one hour before seeking a temporary injunction constituted notice). Thus, the TRO entered here was with notice and after a hearing.

¶ 15  Section 11-101 of the Code contains no requirement that the pleading on which the TRO with notice is granted be verified. Furthermore, a TRO issued after both notice and a hearing is the functional equivalent of a preliminary injunction (*County of Boone*, 2017 IL App (2d) 160184, ¶ 29), and section 11-102 of the Code (735 ILCS 5/11-102 (West 2018)), which governs preliminary injunctions, contains no requirement that the pleadings on which a preliminary injunction is based be verified. See *Roxana Community Unit School District No. 1 v. WRB Refining, LP*, 2012 IL App (4th) 120331, ¶ 19 (verification is not required if defendant receives notice as mandated by section 11-102 of the preliminary-injunction statute).

¶ 16  As for the durational requirement for a TRO, the specific 10-day limit does not apply here as the TRO was issued with notice and after a hearing. See *Abdulhafedh v. Secretary of State*, 161 Ill. App. 3d 413, 416-17 (1987). The TRO entered here does not

7

explicitly contain an expiration date. However, the same day that the TRO was issued, an early hearing on the complaint for declaratory judgment was set for January 13, 2020 (seven days later), which would have allowed the MESD a fair opportunity to respond to the arguments raised in Suarez's complaint.

¶ 17   We now turn to the purpose and requirements of a TRO with notice. The purpose of a TRO is to preserve the status quo until the circuit court can hold a hearing to determine whether it should grant a preliminary injunction. *Id.* at 416. A TRO is a drastic remedy that may only be issued in exceptional circumstances and for a brief duration. *Bartlow v. Shannon*, 399 Ill. App. 3d 560, 567 (2010). In contrast, a preliminary injunction is not necessarily of extremely limited duration since its primary purpose is to provide relief to the injured party and maintain the status quo until a trial can be held on the merits. *County of Boone*, 2017 IL App (2d) 160184, ¶ 28. A TRO issued with notice and a preliminary injunction issued with notice are the same type of relief and, whether referred to under either term, require the same elements of proof. *Kable Printing Co. v. Mount Morris Bookbinders Union Local 65-B*, 63 Ill. 2d 514, 524 (1976).

¶ 18   To be entitled to temporary injunctive relief, a plaintiff must demonstrate (1) a certain and clearly ascertainable right in need of protection, (2) irreparable harm without the protection of an injunction, (3) no adequate remedy at law, (4) a substantial likelihood of success on the merits in the underlying action, and (5) a balance of the equities favors issuing the TRO. *Vasquez v. City of Woodstock*, 242 Ill. App. 3d 766, 771 (1993); *Bartlow*, 399 Ill. App. 3d at 567. However, a plaintiff is not required to make out a case

8

which would entitle him to relief on the merits; rather, he only needs to show that he raises a fair question about the existence of his right and that the court should preserve the status quo until the case can be decided on the merits. *Buzz Barton & Associates, Inc. v. Giannone*, 108 Ill. 2d 373, 382 (1985). The grant or denial of a TRO is within the sound discretion of the circuit court, and we will not disturb the court's decision absent an abuse of discretion. *C.D. Peters Construction Co. v. Tri-City Regional Port District*, 281 Ill. App. 3d 41, 47 (1996). An abuse of discretion occurs only where no reasonable person would take the view adopted by the circuit court. *Smith v. Pavlovich*, 394 Ill. App. 3d 458, 468 (2009).

¶ 19    The MESD first contends that the TRO is defective because it did not maintain the status quo in that it required the Board to recognize a new board member, and it compelled mandatory injunctive relief (instead of restraining the MESD's acts). The TRO issued here required the MESD to comply with section 3-1 of the Act as amended and prohibited the MESD from taking any action in violation of that amendment. The status quo for the appointment of commissioners was the procedures set forth in the newly amended section 3-1 of the Act, which became effective on January 1, 2020. Thus, the circuit court's TRO maintained the status quo by requiring the MESD to comply with those procedures until its complaint for declaratory relief could be decided (as we noted above, the hearing was set for January 13, 2020). As for the TRO improperly compelling mandatory injunctive relief, the MESD points to the following language from section 11-101 of the Code:

9

"Every order granting an injunction and every restraining order shall set forth the reasons for its entry; shall be specific in terms; shall describe in reasonable detail, and not by reference to the complaint or other document, the act or acts sought *to be restrained* \*\*\*." (Emphasis added.) 735 ILCS 5/11-101 (West 2018).

Contrary to the MESD's argument, a temporary injunction can impose mandatory injunctive relief under Illinois law. See *Davis v. East St. Louis & Interurban Water Co.*, 133 Ill. App. 2d 801, 804 (1971) (temporary mandatory injunction was proper where the party seeking the relief showed irreparable harm deserving of injunctive protection).

¶ 20 The MESD next contends that Suarez has failed to demonstrate a clearly ascertainable right in need of protection because Suarez has not pleaded any facts to show how the "public trust" was harmed by the MESD's failure to recognize an appointment to the Board by the mayor of Granite City, while a declaratory judgment action is pending in the Madison County circuit court. The MESD further argues that Suarez lacks standing, as a general taxpayer, to bring an action compelling the Board to comply with the amendment to section 3-1. In contrast, Suaraz argues that he has a tangible legal interest with regard to ensuring that the MESD complies with section 3-1 as amended because the MESD's misconduct is injurious to the public trust; that, as a member of the public, he has a protectable right in statutory compliance by public entities; and that it is well settled under Illinois law that residents and voters of a local governmental entity have standing to challenge the actions of its governing body in contravention of statutory law.

¶ 21 To establish standing in a suit seeking injunctive relief, a plaintiff must establish that he has a clearly ascertainable right or interest which needs protection. *Village of Lake in the Hills v. Laidlaw Waste Systems, Inc.*, 143 Ill. App. 3d 285, 292 (1986).

¶ 22 In *Kluk v. Lang*, our supreme court determined that plaintiffs, who were residents, voters, and members of the Democratic party in the First Representative District, had standing to challenge the statutory scheme that allowed members of party committees to fill legislative vacancies through appointment. 125 Ill. 2d 306, 318-20 (1988). The court concluded that plaintiffs had shown an actual controversy and their interest in it by asserting a violation of their voting rights in the legislative district in question. *Id.* In so deciding, the court distinguished *People ex rel. Turner v. Lewis*, in which the Fourth District concluded that a plaintiff taxpayer did not have standing to challenge the legality of the appointment of the Clark County State's Attorney. 104 Ill. App. 3d 75, 80-81 (1982). The *Turner* court concluded that plaintiff's status as a taxpayer and resident of the county in question did not confer standing on him in that he did not suffer any individualized harm by the appointment; any harm that he suffered would be the same as the harm suffered by every other citizen. *Id.* at 78. In distinguishing *Turner*, the supreme court in *Kluk* noted that *Turner* was a *quo warranto* case, and that historically the requirements for a private person's standing to maintain *quo warranto* proceedings had been stricter than those for declaratory judgment standing. *Kluk*, 125 Ill. 2d at 320. Thus, the court held that *Turner* was inapposite because it involved *quo warranto* proceedings. *Id.*

11

¶ 23 Thereafter, the Third District relied on *Kluk* to find that a plaintiff, who was a voter and city resident, had standing to challenge the city's alleged attempt to change its form of government without complying with the requirements of the Illinois Municipal Code (65 ILCS 5/1-1-1 *et seq.* (West 1992)). *Flowers v. City of Moline*, 251 Ill. App. 3d 348, 350-51 (1993). There, the court noted that the right to be governed in a manner provided by statute and altered only according to law was shared equally by all residents and voters of the city of Moline, that plaintiff was one such resident and voter, and that no one could bring a keener interest to the controversy or sharpen the issues better than plaintiff. *Id.*

¶ 24 Here, like the plaintiff residents in *Kluk* and *Flowers*, Suarez, as a resident/taxpayer of the MESD, has a tangible legal interest in ensuring that the MESD complies with section 3-1 of the Act when it comes to the appointment of its Board commissioners.

¶ 25 The MESD also contends that Suarez has failed to demonstrate that he would suffer irreparable harm without the TRO. In response, Suarez argues that he will suffer irreparable harm without the protection of the TRO because he has no adequate remedy at law to ensure that the MESD complies with the amended Act. He contends that monetary damages cannot adequately compensate for the MESD's noncompliance with the amended Act and that the noncompliance cannot be measured by pecuniary standards.

¶ 26 Once a protectable interest is demonstrated, irreparable injury is presumed if that interest is not protected. *Cameron v. Bartels*, 214 Ill. App. 3d 69, 73 (1991). "Irreparable harm does not mean injury that is beyond repair or beyond compensation in

12

damages but rather denotes transgressions of a continuing nature." *Tamalunis v. City of Georgetown*, 185 Ill. App. 3d 173, 190 (1989). Irreparable harm only occurs where there is no adequate remedy at law, *i.e.*, money damages cannot adequately compensate the injury and the injury cannot be measured by pecuniary standards. *Franz v. Calaco Development Corp.*, 322 Ill. App. 3d 941, 947 (2001).

¶ 27 In *Hopf v. Topcorp, Inc.*, the First District found that the taxpaying plaintiffs would suffer irreparable harm of a continuing nature if economic development corporations owned by the city and a private university were found to be subject to the Illinois Open Meetings Act and the Illinois Freedom of Information Act (Ill. Rev. Stat. 1985, ch. 102, ¶ 41, *et seq.* and Ill. Rev. Stat. 1985, ch. 116, ¶ 201, *et seq.*) and failed to follow the provisions of such acts. 170 Ill. App. 3d 85, 89 (1988).

¶ 28 Here, there would be irreparable harm of a continuing nature if the MESD fails to comply with section 3-1 of the Act as amended by the Illinois legislature as it pertains to the appointment of the Board's commissioners and refuses to recognize appointments that were made in accordance with the Act. Monetary damages cannot adequately compensate for the MESD's noncompliance with the statute and the noncompliance cannot be measured by pecuniary standards. Accordingly, there is no adequate remedy at law for the irreparable harm here.

¶ 29 Suarez last contends that he had a substantial likelihood of success on the merits in the underlying action. The underlying action filed by Suarez seeks a declaration that section 3-1 of the Act as amended, which expressly provides for the dual office-holding of the Granite City mayor and a MESD commissioner, is valid and mandatory upon the

13

MESD. As we noted above, the party seeking a TRO or preliminary injunction is not required to make out a case for which he would be entitled to relief; rather, he need only show that he raises a fair question about the existence of his right and the court should preserve the status quo until that case can be resolved on the merits. *Buzz Barton & Associates, Inc.*, 108 Ill. 2d at 382. "Legislation is presumed to be valid, and the party challenging the constitutionality of a statute bears the burden of establishing its invalidity." *Nevitt v. Langfelder*, 157 Ill. 2d 116, 124 (1993). Moreover, the common law incompatibility doctrine can be overridden by the legislative authorization of dual office holding. *E&E Hauling, Inc. v. Pollution Control Board*, 116 Ill. App. 3d 586, 594 (1983). Thus, unless and until the MESD establishes such invalidity, the status quo is section 3-1 of the Act as amended. Accordingly, we find that Suarez has raised a fair question about the existence of his claimed rights and that the status quo should be preserved until the case can be resolved on the merits.

¶ 30 We now turn to the last requirement for a TRO—the balancing of the equities. In balancing the equities, the trial court must weigh the benefits of granting the injunction against the possible injury to the opposing party. *Makindu v. Illinois High School Ass'n*, 2015 IL App (2d) 141201, ¶ 47. The TRO requires the MESD to comply with the legislative amendment to section 3-1 of the Act. A decision not to issue a TRO would allow the Board to continue to not comply with the statutory provisions enacted by the legislature. Accordingly, we find that the circuit court did not abuse its discretion in issuing the TRO after notice and a hearing.

¶ 31                          III. CONCLUSION

¶ 32    For the reasons stated, the judgment of the circuit court of St. Clair County is affirmed.


¶ 33    Affirmed.