2026 IL App (2d) 250230
No. 2-25-0230
Opinion filed April 17, 2026

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

BRITTANY COLATORTI, Plaintiff-Appellant,

v.

REPUBLICAN LEGISLATIVE COMMITTEE FOR THE TWENTY-SIXTH
LEGISLATIVE DISTRICT and DARBY HILLS, Defendants-Appellees.

Appeal from the Circuit Court of McHenry County.
Honorable Kevin G. Costello, Judge, Presiding.
No. 25-MR-46

JUSTICE BIRKETT delivered the judgment of the court, with opinion.
Presiding Justice Kennedy and Justice McLaren concurred in the judgment and opinion.

**OPINION**

¶ 1    Plaintiff, Brittany Colatorti, appeals an order of the circuit court of McHenry County granting the motions of defendants, Republican Legislative Committee for the Twenty-Sixth Legislative District (the Committee) and Darby Hills, to dismiss with prejudice plaintiff's first amended complaint for declaratory judgment. For the reasons that follow, we affirm.

¶ 2                                    I. BACKGROUND

¶ 3    On February 18, 2025, plaintiff filed a two-count verified complaint for declaratory judgment against defendants.

¶ 4    The complaint alleged the following facts. In late January 2025, Dan McConchie, state senator for the Twenty-Sixth Legislative District, announced his resignation as senator, effective

February 2, 2025. Thereafter, Keith Brin, the Republican county chairman for Lake County, scheduled a meeting for February 14, 2025, with the chairpersons of McHenry County, Kane County, Palatine Township, and Barrington Township for the purpose of creating the Committee and appointing McConchie's replacement. Four citizens, including Hills, submitted applications for the vacancy. On February 14, 2025, the Committee voted to appoint Hills as McConchie's replacement. According to the complaint, as of its filing, Hills had not yet been sworn into office.

¶ 5    Count I of the complaint alleged that, prior to holding the meeting to fill the vacancy, the Committee failed to provide public notice as required under section 25-6(a) of the Election Code (see 10 ILCS 5/25-6(a) (West 2022)). According to the complaint, plaintiff was qualified to apply for consideration as an appointee and, thus, had been entitled to notice. Plaintiff asked the trial court to declare that (1) the Committee was required to give statutory notice before appointing McConchie's replacement, (2) the Committee failed to provide the requisite notice, and (3) the Committee's act of appointing Hills was *ultra vires* for failing to prove such notice.

¶ 6    Count II of the complaint alleged that the Committee also disregarded the statutory requirement that "[t]he appointee shall be a member of the same political party as the person he succeeds was at the time of his election." See *id.* According to the complaint, upon information and belief, Hills was not a member of the Republican Party, in that she did not meet any of the qualifying requirements set forth at section 25-6(c) of the Election Code (*id.* § 25-6(c)). Plaintiff alleged that had she applied to replace McConchie, she would have satisfied the qualifying requirements, given that she had voted in a Republican primary in the past 23 months. Plaintiff asked the trial court to declare that (1) Hills did not meet any of the qualifying requirements, (2) Hills was not qualified to replace McConchie, and (3) the Committee's act of appointing Hills was *ultra vires*.

¶ 7    On February 19, 2025, plaintiff filed an emergency motion for a temporary restraining order (TRO). Plaintiff asked the trial court to enjoin defendants from taking any action that would result in Hills being sworn in as McConchie's replacement.

¶ 8    On February 20, 2025, the Committee responded to the emergency motion. The Committee argued, among other things, that it had provided the statutorily required notice.

¶ 9    On February 21, 2025, following a hearing, the trial court entered an order stating as follows: (1) the motion for a TRO was withdrawn upon agreement of the parties; (2) the Committee shall provide statutory notice via press release by 5 p.m. on February 21, 2025, for a meeting to be held on February 28, 2025, at 1 p.m.; (3) interested parties may apply for the vacancy by 5 p.m. on February 25, 2025; and (4) prior applicants for the vacancy need not reapply. (A report of proceedings from this hearing is not included in the record on appeal.)

¶ 10    On March 18, 2025, plaintiff filed her first amended verified complaint for declaratory judgment—the complaint at issue here. It alleged the following additional facts. "On or about February 18, 2025, *** Brin appointed Hills as a precinct committeeperson to Ela Township, Lake County, IL." According to plaintiff, "[p]rior to this appointment by *** Brin on February 18, 2025, Hills did not meet any of the five enumerated categories provided in [section 25-6(c) of the Election Code]" to qualify as a Republican. On February 21, 2025, the Committee gave public notice of a February 28, 2025, meeting to appoint McConchie's replacement. The meeting was held on February 28, 2025. Once again, the Committee voted to appoint Hills as McConchie's replacement. Hills was sworn into office.

¶ 11    The first amended complaint contained a single count for declaratory judgment. Plaintiff alleged that Hills was not qualified to replace McConchie because, although Hills met the statutory requirements to qualify as a Republican on February 18, 2025, when Brin appointed her as a

- 3 -

Republican precinct committeeperson (see *id.* § 25-6(c)(v)), she was not a member of the Republican Party on (1) January 31, 2025, when the public was first notified of McConchie's vacancy; (2) February 2, 2025, when the vacancy occurred; or (3) February 14, 2025, when she was first appointed to replace McConchie. Plaintiff alleged that because she voted in the 2022 and 2024 Republican primaries and voted for McConchie, a Republican, in the 2022 general election, she had a legal right to insist that McConchie's appointed replacement be a member of the Republican Party.

¶ 12     Plaintiff asked the trial court to declare that (1) Hills was not qualified to replace McConchie either (a) on January 31, 2025, when the vacancy became public, or (b) on February 2, 2025, when the vacancy occurred, and thus (2) the Committee's act on February 28, 2025, of appointing Hill as McConchie's replacement was *ultra vires*. (Plaintiff sought no declaration as to Hills's status as a Republican on February 14, 2025, when she was first appointed to replace McConchie.) Plaintiff also asked the court to include, in its judgment granting the foregoing relief, a declaration that McConchie's former seat was now vacant again.

¶ 13     The Committee and Hills filed separate motions to dismiss, but each adopted the other's motion. Hills moved to dismiss under section 2-619.1 of the Code of Civil Procedure (Code) (735 ILCS 5/2-619.1 (West 2022)). Hills argued that (1) plaintiff did not have standing to challenge Hill's qualifications for office because plaintiff (a) was not a candidate for the vacancy, (b) was not present at the February 28, 2025, meeting, and (c) did not challenge the constitutionality of section 25-6 of the Election Code (10 ILCS 5/25-6 (West 2022)); (2) the trial court did not have subject matter jurisdiction to assess the qualifications of a sworn-in state senator; (3) Hills qualified as a Republican under section 25-6(c) of the Election Code (*id.* § 25-6(c)); and (4) the "23-month rule" contained in section 25-6(c) of the Election Code (*id.*) was unconstitutional.

¶ 14 The Committee moved to dismiss under section 2-615 of the Code (735 ILCS 5/2-615 (West 2022)). The Committee contended that there was no basis for plaintiff's claim that Hills was required to have been a Republican on either (1) the day the vacancy was publicly announced or (2) the effective date of the vacancy. Thus, according to the Committee, "[p]laintiff's entire case, which rest[ed] on this non-existent premise, fail[ed] from the get-go." The Committee further contended that the first amended complaint was "infirm in many other ways that require[d] its dismissal." More specifically, the Committee maintained that (1) Hills was qualified under section 25-6(a) of the Election Code when she was sworn in on February 28, 2025; (2) plaintiff lacked standing to assert that Hills was not qualified; (3) any challenge to Hills's qualifications must be made in the state Senate; (4) even if Hills was unqualified, "the 23-month requirement for political party affiliation [under section 25-6(c) of the Election Code (10 ILCS 5/25-6(c) (West 2022))] [was] an unconstitutional infringement on *** Hills'[s] [f]irst [a]mendment rights and the associational rights of the Committee"; and (5) section 2-701(a) of the Code (735 ILCS 5/2-701(a) (West 2022)) precludes a litigant from maintaining a declaratory judgment action involving a political question.

¶ 15 On April 28, 2025, plaintiff filed a combined response to defendants' motions to dismiss.

¶ 16 A hearing took place on May 30, 2025.

¶ 17 On June 3, 2025, the trial court issued its "Memorandum Decision and Order" dismissing plaintiff's first amended complaint with prejudice. The court found that it was "undisputed that Hills was appointed as a precinct committeeperson on February 18, 2025," and that, thus, under section 25-6(c)(v) of the Election Code (10 ILCS 5/25-6(c)(v) (West 2022)), she was a Republican when the February 28, 2025, meeting, vote, and swearing-in took place. The court rejected an argument raised by plaintiff that Hills was "actually appointed on February 14, 2025" (*prior* to her

qualification on February 18, 2025) and that the subsequent "meeting and vote of February 28, 2025[,] was actually a reappointment." The court noted that it was plaintiff's actions—*i.e.*, the filing of the initial complaint—that triggered the second committee meeting and vote and that her argument "fl[ew] in the face of the agreed order she entered into on February 21, 2025," by which she agreed to reopen the application and voting process, thereby rendering the February 14, 2025, vote a nullity. The court stated: "It strikes the [c]ourt as unlikely that if [plaintiff] had applied for the appointment as the February 21, 2025[,] [o]rder provided an opportunity for her to do, and had been voted in, she would have then argued that Hills had already been appointed."

¶ 18 The trial court also rejected an argument raised by plaintiff that, even if Hills was deemed appointed on February 28, 2025, after her appointment as a precinct committeeperson, "the true meaning and intent of the Illinois Constitution and [section 25-6 of the Election Code] [was] that the proposed appointee need be a member of the same political party as the legislator to be replaced at the time of the vacancy, not at the time of the appointment." The court declined plaintiff's invitation to read such a requirement into the statute, noting that the provisions of section 25-6 "could not be clearer" and that, under those provisions, Hills was a Republican when she was appointed on February 28, 2025.

¶ 19 Finally, although the trial court recognized that defendants raised additional arguments in support of their motions to dismiss, it found that, given its ruling, it need not consider them.

¶ 20 Plaintiff timely appealed.

¶ 21                                    II. ANALYSIS

¶ 22 Plaintiff contends that the trial court erred in concluding that the Committee complied with section 25-6(a) of the Election Code (*id*. § 25-6(a)) when it appointed Hills to fill McConchie's

vacancy. In addition, plaintiff contends that section 25-6(a) of the Election Code (*id.*) violates article IV, section 2(d) of the Illinois Constitution (Ill. Const. 1970, art. IV, § 2(d)).

¶ 23     In response, defendants contend that (1) Hills was qualified to replace McConchie based on the plain language of section 25-6(a) of the Election Code (10 ILCS 5/25-6(a) (West 2022)) and (2) plaintiff has forfeited her constitutional challenge to section 25-6(a) of the Election Code.

¶ 24     As additional bases for affirming the dismissal, defendants also contend that (1) this court does not have subject matter jurisdiction over plaintiff's claim, (2) plaintiff does not have standing to challenge the Committee's judgment, (3) section 2-701(a) of the Code (735 ILCS 5/2-701(a) (West 2022)) prohibits consideration of this action, and (4) the "23-month 'lock-in' rule [contained in section 25-6(c) of the Election Code (10 ILCS 5/25-6(c) (West 2022))] is unenforceable as violative of the [f]irst [a]mendment's guarantee of freedom of association."

¶ 25     As noted, Hills brought her motion to dismiss under section 2-619.1 of the Code (735 ILCS 5/2-619.1 (West 2022)) whereas the Committee brought its motion to dismiss under section 2-615 of the Code (*id.* § 2-615). Each adopted the other's motion. Section 2-619.1 of the Code (*id.* § 2-619.1) permits a party to file a combined motion seeking dismissal under both section 2-615 (*id.* § 2-615) and section 2-619 (*id.* § 2-619) of the Code. "A section 2-615 motion attacks the legal sufficiency of the plaintiff's claims, while a section 2-619 motion admits the legal sufficiency of the claims but raises defects, defenses, or other affirmative matter, appearing on the face of the complaint or established by external submissions, that defeats the action." *Aurelius v. State Farm Fire & Casualty Co.*, 384 Ill. App. 3d 969, 972-73 (2008).

¶ 26     Here, the trial court apparently dismissed the complaint under section 2-615, declining to address any of defendants' arguments for dismissal under section 2-619. On appeal, defendants contend that dismissal was warranted under both sections. Plaintiff did not file a reply brief to

- 7 -

respond to defendants' additional arguments. In any event, we hold that dismissal was proper under either section.

¶ 27                                    A. Dismissal Under Section 2-615 of the Code

¶ 28    We first address the propriety of the trial court's dismissal of the first amended complaint under section 2-615 of the Code (735 ILCS 5/2-615 (West 2022)). A motion to dismiss under section 2-615 of the Code challenges the legal sufficiency of a complaint based on defects apparent on its face. *Wilson v. County of Cook*, 2012 IL 112026, ¶ 14. The critical inquiry in reviewing a dismissal under section 2-615 is whether the allegations in the complaint, construed in the light most favorable to the plaintiff, are sufficient to state a cause of action upon which relief may be granted. *Doe-3 v. McLean County Unit District No. 5 Board of Directors*, 2012 IL 112479, ¶ 16. In making this determination, the court accepts as true all well-pleaded facts and all reasonable inferences that may be drawn from those facts. *Marshall v. Burger King Corp.*, 222 Ill. 2d 422, 429 (2006). "Although a section 2-615 motion to dismiss admits all well-pleaded facts as true, it does not admit conclusions of law or factual conclusions that are unsupported by allegations of specific facts." *McLean v. Rockford County Club*, 352 Ill. App. 3d 229, 232 (2004). "If, after disregarding any legal and factual conclusions, the complaint does not allege sufficient facts to state a cause of action, the motion to dismiss should be granted." *Id.*

¶ 29    This court reviews *de novo* an order granting a section 2-615 motion. *Northwestern Illinois Area Agency on Aging v. Basta*, 2022 IL App (2d) 210234, ¶ 33. To the extent our review also requires us to interpret relevant provisions of the Election Code, we conduct that review *de novo* as well. See *Ramirez v. Chicago Board of Election Commissioners*, 2020 IL App (1st) 200240, ¶ 11.

¶ 30    Plaintiff's first amended complaint requested a declaration that (1) Hills was not qualified to replace McConchie either (a) on January 31, 2025, when the public was first notified of McConchie's vacancy or (b) on February 2, 2025, when the vacancy occurred, and thus, (2) the Committee's act on February 28, 2025, of appointing Hill as McConchie's replacement was *ultra vires*.

¶ 31    Section 2-701(a) of the Code (735 ILCS 5/2-701(a) (West 2022)) governs requests for declaratory relief. It provides, in relevant part, as follows:

> "The court may, in cases of actual controversy, make binding declarations of rights, having the force of final judgments, whether or not any consequential relief is or could be claimed, including the determination, at the instance of anyone interested in the controversy, of the construction of any statute, municipal ordinance, or other governmental regulation, or of any deed, will, contract or other written instrument, and a declaration of the rights of the parties interested. *** In no event shall the court entertain any action or proceeding for a declaratory judgment or order involving any political question where the defendant is a State officer whose election is provided for by the Constitution[.]" *Id.*

"The declaratory judgment statute is liberally construed and should not be restricted by unduly technical interpretations." (Internal quotation marks omitted.) *Illinois Gaming Machine Operators Ass'n v. City of Waukegan*, 2025 IL App (2d) 230431, ¶ 113. "Declaratory relief is proper only if there is an actual legal controversy between the parties, *i.e.*, if there is a concrete dispute admitting of an immediate and definitive determination of the parties' rights, the resolution of which will aid in the termination of the controversy or some part thereof." (Internal quotation marks omitted.) *Id.* ¶ 114.

¶ 32    We note that plaintiff, in her brief, makes no reference to section 2-615 of the Code or to the elements necessary to state a claim for declaratory judgment. She contends only generally that the trial court erred in finding that the Committee's appointment of Hills complied with section 25-6(a) of the Election Code (10 ILCS 5/25-6(a) (West 2022)). Nevertheless, defendants contend that because plaintiff's entire claim for declaratory judgment rests on a faulty premise, the trial court properly dismissed it. We agree.

¶ 33    We turn to the relevant provisions of the Election Code. Section 25-6(a) of the Election Code provides that

> "[w]hen a vacancy occurs in the office of State Senator or Representative in the General Assembly, the vacancy shall be filled within 30 days by appointment of the legislative or representative committee of that legislative or representative district of the political party of which the incumbent was candidate at the time of his election." *Id.*

Section 25-6(a) provides further that "[t]he appointee shall be a member of the same political party as the person he succeeds was at the time of his election, and shall be otherwise eligible to serve as a member of the General Assembly." *Id.*

¶ 34    Section 25-6(c) of the Election Code sets forth the criteria for qualification as "a member of a political party":

> "For purposes of this Section, a person is a member of a political party for 23 months after (i) signing a candidate petition, as to the political party whose nomination is sought; (ii) signing a statement of candidacy, as to the political party where nomination or election is sought; (iii) signing a Petition of Political Party Formation, as to the proposed political party; (iv) applying for and receiving a primary ballot, as to the political party whose ballot is received; or (v) becoming a candidate for election to or *accepting appointment to the*

*office of ward, township, precinct or state central committeeperson.*" (Emphasis added.) *Id.* § 25-6(c).

¶ 35 Here, it is undisputed that Hills was appointed as a Republican precinct committeeperson on February 18, 2025. Thus, under section 25-6(c)(v) of the Election Code, Hills was a member of the Republican Party as of that date. As a result, there can be no dispute that Hills was a member of the Republican Party on February 28, 2025, when the Committee met, voted to appoint Hills to fill the McConchie vacancy, and swore Hills into office.

¶ 36 Nevertheless, plaintiff contends that "if the requirement of being from the same political party is to have any real meaning[,] then the qualifications of a prospective candidate need [to] be measured on the date of the vacancy." She also seems to contend alternatively "that the qualification of Hills must have occurred no later than when she submitted her nomination papers to be considered for the appointment." (According to the first amended complaint, Hills "submitted [an] application[ ]" at some point prior to February 14, 2025.)

¶ 37 Plaintiff's arguments fail. "The fundamental rule of statutory interpretation is to ascertain and give effect to the legislature's intent, and the best indicator of that intent is the statutory language, given its plain and ordinary meaning." *Dew-Becker v. Wu*, 2020 IL 124472, ¶ 12. "When the statutory language is clear and unambiguous, it is given effect as written without resort to other aids of statutory interpretation." *Id.*

¶ 38 Here, the statutory language is clear and unambiguous. Section 25-6(a) provides: "The *appointee* shall be a member of the same political party as the person he succeeds was at the time of his election ***." (Emphasis added.) 10 ILCS 5/25-6(a) (West 2022). Merriam-Webster defines "appointee" as "one who is appointed." Merriam-Webster Online Dictionary, https:// www. merriam-webster.com/dictionary/appointee (last visited Apr. 6, 2026) [https://perma.cc/P77R-

N9KK]. Thus, one is not an "appointee" until such time as they are "appointed." It necessarily follows then that Hills was required to be a Republican when she was appointed on February 28, 2025, and became an "appointee." She was.

¶ 39     Plaintiff states:

"The question before the [c]ourt is *** at any point in time after the vacancy occurs, but before the 30-days expires, can the *** Committee choose any person they desire and condition that person under the requirements of [section 25-6(c) of the Election Code (10 ILCS 5/25-6(c) (West 2022))] and then call him a qualified candidate."

Under the plain language of the statute, the answer is yes. There is no requirement that the appointee be a member of the relevant political party (1) when the vacancy is made public, (2) when the vacancy occurs, or (3) for a minimum amount of time prior to being appointed. The statute requires only that the "appointee shall be a member of the [relevant] political party." 10 ILCS 5/25-6(a) (West 2022). As noted, one is not an "appointee" until they are appointed. Had the legislature intended to impose an at-the-time-of-the-vacancy requirement or a durational requirement, they were free to do so. They did not; nor can we. See *Dew-Becker*, 2020 IL 124472, ¶ 14 ("Courts are not free to read into a statute exceptions, limitations, or conditions the legislature did not express.").

¶ 40     We find curious plaintiff's allegation that "[d]efendants orchestrated a ruse to 'condition' *** Hills after first unlawfully appointing her on February 14, 2025." According to plaintiff, it was not until she filed her initial complaint raising the issue of Hills's qualifications that Brin "conditioned [Hills] under one of the statutory factors," *i.e.*, by appointing Hills as a precinct committeeperson. However, as the trial court noted, it was plaintiff who provided defendants with the opportunity to conduct the hearing anew on February 28, 2025, (thereby allowing the

opportunity for Hills to statutorily qualify as a member of the Republican Party) by agreeing to the February 21, 2025, order. Indeed, plaintiff could have stood on her original complaint and challenged the February 14, 2025, appointment; she chose not to do so.

¶ 41 We note that the cases relied on by plaintiff do not warrant a different conclusion, as they are readily distinguishable and, in any event, support defendants' position. Plaintiff's cited cases hold that, under the provisions of the Election Code at issue in each case, candidates who file statements of candidacy must attest that they meet the qualifications for the office sought at the time they file the statement. See, *e.g.*, *Goodman v. Ward*, 241 Ill. 2d 398, 408 (2011) (interpreting the requirement, under section 7-10 of the Election Code, that a candidate support a nomination petition with a sworn statement of candidacy "attesting that he or she 'is qualified for the office specified,' " to require that candidates "meet the qualifications for the office they seek, including the residency requirement, at the time they submit the statement of candidacy which must accompany their nominating papers" (quoting 10 ILCS 5/7-10 (West 2008))); *Cinkus v. Village of Stickney Municipal Officers Electoral Board*, 228 Ill. 2d 200, 219 (2008) (holding that, because "[t]he statement of candidacy and accompanying oath [contained in section 10-5 of the Election Code (10 ILCS 5/10-5 (West 2006))] are phrased in the present tense," "when a candidate submits his or her nomination papers to run for office, the candidate swears he or she is—not will be— qualified for the office sought"); *Schumann v. Fleming*, 261 Ill. App. 3d 1062, 1066 (1994) (holding that, under section 7-10 of the Election Code, "at the time that the candidate obtains the necessary petitions for nomination, he must swear that he *is (not 'will be')* qualified to hold office," and "[t]o be 'qualified' or 'eligible' to hold office he must have been a resident of the township for one year" (emphasis in original) (quoting 10 ILCS 5/7-10 (West 1992))). The present case does not involve a statement of candidacy. In any event, these cases show that timing is everything and,

in that respect, support defendants' argument. Here, section 25-6(a) requires that "[t]he appointee shall be a member of the same political party." 10 ILCS 5/25-6(a) (West 2022). As for the timing of when that membership must have occurred, given our interpretation of the statute's plain language, it need only have occurred by the time of appointment.

¶ 42   Accordingly, based on the foregoing, we hold that plaintiff's declaratory judgment action was properly dismissed under section 2-615, as there was no basis for her claim. See *McClellan v. Banc Midwest*, 164 Ill. App. 3d 304, 310 (1987) (where the premise for the declaratory judgment counts in the plaintiff's complaint were deemed insufficient, the declaratory judgment counts were properly dismissed on this basis).

¶ 43                    B. Constitutionality of Section 25-6(a) of the Election Code

¶ 44   Plaintiff next contends that, if we find that the language of section 25-6(a) of the Election Code is clear and that Hills was properly appointed thereunder, then we should find that the statute is unconstitutional. According to plaintiff, "if the Illinois Constitutional mandate that the vacancy mut [*sic*] be filled by a member of the same political party is to have any meaning[,] then the measure of qualification must occur prior to or contemporaneously with the public announcement of the vacancy."

¶ 45   Defendants contend that plaintiff has forfeited this argument by failing to raise it below. "In civil cases, constitutional issues not presented to the trial court are deemed forfeited and may not be raised for the first time on appeal." *Sherman v. Indian Trails Public Library District*, 2012 IL App (1st) 112771, ¶ 21. Plaintiff asserted at oral argument that she has not forfeited the issue, because she raised the issue during the hearing on May 30, 2025.

¶ 46   Forfeiture aside, the argument lacks merit. Under the Illinois Constitution, when there is a vacancy in the state legislature, "it shall be filled by appointment as provided by law." Ill. Const.

1970, art. IV, § 2(d). Our constitution further requires that "[a]n appointee to fill a vacancy shall be a member of the same political party as the person he succeeds." *Id.* The statute at issue here requires the same. As already discussed, under the statute, there is no time requirement as to an individual's political party affiliation. The statute requires only that "[t]he appointee shall be a member of the same political party as the person he succeeds was at the time of his election, and shall be otherwise eligible to serve as a member of the General Assembly." 10 ILCS 5/25-6(a) (West 2022). As this is in line with our constitution's requirements, we can see no constitutional conflict.

¶ 47    C. Defendants' Additional Arguments for Dismissal Under Section 2-619 of the Code

¶ 48    Defendants contend that dismissal of the first amended complaint was also warranted under section 2-619 of the Code (735 ILCS 5/2-619 (West 2022)). "[A] section 2-619 motion admits the legal sufficiency of the claims but raises defects, defenses, or other affirmative matter, appearing on the face of the complaint or established by external submissions, that defeats the action." *Aurelius*, 384 Ill. App. 3d at 972-73. Section 2-619(a)(1) allows for dismissal of an action if the court lacks subject matter jurisdiction. 735 ILCS 5/2-619(a)(1) (West 2022). Another enumerated ground for a dismissal under section 2-619 is that the claim is barred by an "affirmative matter avoiding the legal effect of or defeating the claim." *Id.* § 2-619(a)(9). Lack of standing constitutes an "affirmative matter" that can be asserted under section 2-619(a)(9). *Basta*, 2022 IL App (2d) 210234, ¶ 89.

¶ 49                                  1. Subject Matter Jurisdiction

¶ 50    Defendants contend that this court lacks subject matter jurisdiction over plaintiff's claim because it presents a political question.

¶ 51    The court has subject matter jurisdiction over a claim "if the matter brought before the court by the plaintiff or petitioner is justiciable." (Internal quotation marks omitted.) *In re M.W.*, 232 Ill. 2d 408, 424 (2009). The political-question doctrine "holds that certain questions, deemed political in nature, are not justiciable." *Moore v. Grafton Township Board of Trustees*, 2011 IL App (2d) 110499, ¶ 5; see *Baker v. Carr*, 369 U.S. 186, 209 (1962). The doctrine "derives from the principle of separation of powers." *Moore*, 2011 IL App (2d) 110499, ¶ 5. The function of the doctrine "is to ensure that the judiciary does not exercise the powers of another branch of government." *Id.*

¶ 52    In *Baker*, the United States Supreme Court identified six characteristics of cases that are inappropriate for judicial review under the political-question doctrine. The Court stated:

> "Prominent on the surface of any case held to involve a political question is found [(1)] a textually demonstrable constitutional commitment of the issue to a coordinate political department; or [(2)] a lack of judicially discoverable and manageable standards for resolving it; or [(3)] the impossibility of deciding without an initial policy determination of a kind clearly for nonjudicial discretion; or [(4)] the impossibility of a court's undertaking independent resolution without expressing lack of the respect due coordinate branches of government; or [(5)] an unusual need for unquestioning adherence to a political decision already made; or [(6)] the potentiality of embarrassment from multifarious pronouncements by various departments on one question." *Baker*, 369 U.S. at 217.

The presence of any one factor is sufficient to determine the issue is nonjusticiable. *Id.*

¶ 53    Here, defendants argue that the present matter involves a political question under the first and second *Baker* factors. We address each in turn.

¶ 54    First, defendants argue that there "is a demonstrable constitutional commitment of the question to another branch of government" such that a court is precluded from considering the issue of Hills's qualifications. In support, defendants point to article IV, section 6(d) of the Illinois Constitution, which provides:

> "(d) Each house shall determine the rules of its proceedings, judge the elections, returns and qualifications of its members and choose its officers. ***." Ill. Const. 1970, art. IV, § 6(d).

Thus, according to defendants, the determination as to whether Hills is qualified is "firmly committed to the State Senate." We disagree.

¶ 55    First, we note that the crux of the issue here does not concern the Committee's judgment on Hills's qualifications. There is no question that Hills "became a member of [the Republican Party]" on February 18, 2025, when Brin appointed her as a Republican precinct committeeperson. See 10 ILCS 5/25-6(c)(iv) (West 2022). Thus, there is also no question that Hills was qualified as a Republican when she was appointed. Rather, the question presented by plaintiff involves one of statutory interpretation, *i.e.*, whether, for purposes of section 25-6(a), Hills was required to have been qualified as a Republican (1) on January 31, 2025, when the notice of McConchie's resignation became public; (2) on February 2, 2025, when the vacancy occurred; or (3) at some point prior to February 14, 2025, when she filed her application.

¶ 56    Contrary to defendants' argument, we can see no textually demonstrable constitutional commitment of issues involving statutory interpretation to the state senate. As noted, when there is a vacancy in the state legislature, the vacancy "shall be filled by appointment *as provided by law*." (Emphasis added.) Ill. Const. 1970, art. IV, § 2(d). "It is the dominion of the legislature to enact laws[,] and it is the province of the courts to construe those laws." (Internal quotation marks

omitted.) *In re Estate of Shelton*, 2017 IL 121199, ¶ 43; see *Kluk v. Lang*, 125 Ill. 2d 306, 322-23 (1988) (finding that the plaintiffs' challenge to the defendant state representative's appointment, which was based on a challenge to the constitutionality of section 25-6 of the Election Code, was not precluded by the political question doctrine because resolution of the matter was not constitutionally committed to the legislature and did not intrude on the powers of the legislative branch). "The mere fact that political rights and questions are involved does not create immunity from judicial review." (Internal quotation marks omitted.) *Kluk*, 125 Ill. 2d at 323. Thus, given that our review of the matter requires us to engage only in statutory interpretation, judicial review is not precluded.

¶ 57    Concerning the second *Baker* factor, defendants argue that "the task of determining whether *** Hills qualifies as a Republican is frought [*sic*] with subjective determinations for which there are no manageable standards." Again, we disagree. Contrary to defendants' second argument, there is no "lack of judicially discoverable and manageable standards for resolving [the issue]." *Baker*, 369 U.S. at 217. Indeed, as noted, to resolve the issue at hand, all we needed to do was apply the familiar principles of statutory interpretation.

¶ 58    Accordingly, we reject defendants' argument that the case involves a nonjusticiable political question such that we are precluded from considering the issue.

¶ 59                                2. Standing

¶ 60    Defendants also contend that plaintiff lacked standing to challenge the Committee's judgment as to whether Hills was qualified under section 25-6(a) of the Election Code (10 ILCS 5/25-6(a) (West 2022)) to replace McConchie.

¶ 61    "The doctrine of standing ensures that issues are raised only by parties having a real interest in the outcome of the controversy." *Powell v. Dean Foods Co.*, 2012 IL 111714, ¶ 35. A plaintiff

bringing a declaratory judgment action must "possess[ ] some personal claim, status, or right, a distinct and palpable injury to which is fairly traceable to the defendant's conduct and substantially likely to be prevented or redressed by the grant of such relief." *Kluk*, 125 Ill. 2d at 314. "[T]he purpose of the standing requirement is to assure sufficient sharpness in defining the issues so that the court may be aided in deciding the case; it is meant to preclude uninterested persons from suing but is not meant to preclude a valid controversy from being litigated \*\*\*." *Id.* at 315. "The declaratory judgment remedy should be liberally applied and not restricted by unduly technical interpretations." *Id.*

¶ 62   Here, defendants argue that, because plaintiff did not apply for the McConchie vacancy, her interest in the Committee's judgment and the individual selected by the Committee is only that of a concerned citizen, indistinguishable from that of any member of the general public. Thus, according to defendants, plaintiff lacks standing. We disagree.

¶ 63   *Kluk* is instructive. In *Kluk*, two plaintiffs filed separate complaints (consolidated on appeal) challenging the constitutionality of section 25-6 of the Election Code (Ill. Rev. Stat., 1986 Supp., ch. 46, ¶ 25-6). *Kluk*, 125 Ill. 2d at 309-10. The plaintiffs alleged "that the statute represent[ed] an unconstitutional delegation of legislative power to private individuals." *Id.* at 310. The defendant in each case—Lang—was the individual who had been appointed under the statute to fill a vacancy in the legislature. *Id.* at 311-12. (The State intervened to defend the statute. *Id.* at 312.) One plaintiff—Daniel—sued in his capacity "as a resident, voter, and member of the Democratic Party in the district," stating "his desire that only a duly and legally appointed person represent him in the House of Representatives." *Id.* The other plaintiff—Kluk—alleged that he was qualified to fill the vacancy and that he had appeared before the committee prior to Lang's appointment. *Id.* Daniel's complaint was dismissed for lack of standing. *Id.* However, the trial

court found that Kluk had standing because he had appeared before the committee. *Id.* The court granted Kluk's motion for summary judgment, finding the statute unconstitutional. *Id.* at 313.

¶ 64    On direct appeal to the supreme court, Lang challenged each plaintiff's standing to litigate the constitutionality of the statute. *Id.* The court rejected the challenges. *Id.* at 313-20. The court explained:

"In the present case, [the] plaintiffs allege that their right to be represented by a duly elected legislator is violated by operation of the challenged statute. Lang does not dispute that there is an actual controversy. He merely asserts that [the] plaintiffs lack sufficient interest in it. Yet, the fact that [the] plaintiffs share their right of representation with other voters in the district does not mean that the right is any less personal. The essence of the democratic voting right is that it is equally and separately vested in each member of the electorate. The right to vote is not a common right of the public, such as the beneficial interest in property held in public trust, or the assurance that public funds will be expended lawfully. Rather, the voting right is by definition capable of being exercised individually by each voter; indeed, this is its genius. The right to be represented is intertwined with the right to vote and is likewise personal to each voter.

Here, [the] plaintiffs in effect claim injury to their voting right by the statutory creation of what they deem an unconstitutional selection mechanism to replace the Representative as to whom their voting right was originally exercisable. The alleged violation of [the] plaintiffs' right is traceable at least in part to Lang's conduct in seeking and accepting appointment to the vacancy in office, and the remedies sought, if granted, would be likely to redress the violation." *Id.* at 317.

The court stated further: "Since the right to vote for a Representative, and the concomitant right to be represented through a lawfully established mechanism, are equally dispersed throughout the electorate, no other plaintiffs could sharpen the issues by bringing a keener interest to the litigation." *Id.* at 318.

¶ 65    Here, plaintiff has "in effect claim[ed] injury to [her] voting right" (see *id.* at 317) by the Committee's allegedly erroneous interpretation of the statute under which Hills was appointed to replace McConchie—the individual to whom her voting right was originally exercisable. Thus, in line with the reasoning in *Kluk*, plaintiff has standing to seek judicial interpretation of that statute. Defendants acknowledge *Kluk* but argue that it is distinguishable because the plaintiffs there challenged the constitutionality of a statute, whereas here "[p]laintiff purports to challenge the judgment of Committee on whether *** Hills qualifies as a Republican." However, as noted above, the issue presented does not concern the Committee's judgment; rather, it is one of statutory interpretation.

¶ 66              3. Propriety of Action Under Section 2-701(a) of the Code

¶ 67    Defendants also contend that the present action is precluded under section 2-701 of the Code (735 ILCS 5/2-701(a) (West 2022)). As noted above, section 2-701 of the Code provides, in pertinent part, that "[i]n no event shall the court entertain any action or proceeding for a declaratory judgment or order involving any political question where the defendant is a State officer whose election is provided for by the Constitution." *Id.* Defendants' argument here is again based on the assertion that this court is being asked to decide a political question. As we have concluded that this case does not present a nonjusticiable political question, defendants' argument fails.

¶ 68                    D. Defendants' Constitutional Challenge to

                         Section 25-6(c) of the Election Code

¶ 69    Last, defendants seek to challenge the constitutionality of section 25-6(c) the Election Code (10 ILCS 5/25-6(c) (West 2022)), which provides that "a person is a member of a political party for 23 months after" the occurrence of certain triggering events. According to defendants, the "23-month 'lock-in' rule is unenforceable as violative of the [f]irst [a]mendment's guarantee of freedom of association [(U.S. Const., amend. I)]" with respect to both Hills and the members of the Committee.

¶ 70    Assuming *arguendo* that the issue is properly before us, we decline defendants' invitation to consider it. Our supreme court's "long-standing rule is that 'cases should be decided on nonconstitutional grounds whenever possible, reaching constitutional issues only as a last resort.' " *The Carle Foundation v. Cunningham Township*, 2017 IL 120427, ¶ 34 (quoting *In re E.H.*, 224 Ill. 2d 172, 178 (2006)). "Consequently, 'courts *** must avoid reaching constitutional issues when a case can be decided on other, nonconstitutional grounds,' and such issues 'should be addressed only if necessary to decide a case.' " *Id.* (quoting *People v. Hampton*, 225 Ill. 2d 238, 244 (2007)). Here, it is not necessary to determine whether section 25-6(c) of the Election Code is constitutional to decide the issues before us. Accordingly, we do not consider it.

¶ 71                              III. CONCLUSION

¶ 72    For the reasons stated, we affirm the judgment of the circuit court of McHenry County.

¶ 73    Affirmed.

*Colatorti v. Republican Legislative Committee for the Twenty-Sixth Legislative District*,
2026 IL App (2d) 250230

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of McHenry County, No. 25-MR-46; the Hon. Kevin G. Costello, Judge, presiding. |
| **Attorneys for Appellant:** | Thomas G. Devore and Jeffrey A. Mollet, both of Litchfield, for appellant. |
| **Attorneys for Appellee:** | John G. Fogarty Jr., of Chicago, and Burton S. Odelson, Ross D. Secler, Priscilla Centeno, and Gerard Igoe, of Odelson, Murphey, Frazier & McGrath, Ltd., of Evergreen Park, for appellees. |